# In the United States Court of Federal Claims

|  |  |
|---|---|
| COLONEL JEFFERSON KASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19-1492C |
| v. ) | (Filed: January 21, 2022) |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

*John B. Wells*, Slidell, LA, for Plaintiff.

*Anthony F. Schiavetti*, Senior Trial Counsel, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Allison Kidd-Miller*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, and *Brian M. Boynton*, Acting Assistant Attorney General, for Defendant. *Lieutenant Nathaniel Bosiak*, Office of the Judge Advocate General, Code 14, General Litigation, Department of the Navy, Washington Navy Yard, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

This military disability retirement case is before the Court for the second time. As described in detail in the Court's first Opinion, see August 13, 2020 Opinion & Order ("Op."), ECF No. 24, in 2013 an informal Physical Evaluation Board ("PEB") found Marine Corps Colonel Jefferson Kaster unfit for duty as a result of post-traumatic stress disorder ("PTSD") and major depressive disorder. It recommended that he be placed on the Temporary Disability Retired List ("TDRL"). Col. Kaster disagreed with the informal PEB's recommendation, arguing that it should have instead placed him on the Permanent Disability Retired List ("PDRL"). He also took issue with the informal PEB's finding that several other medical conditions he had developed while in service—including fibromyalgia, chronic fatigue syndrome, and sleep apnea—did not render him unfit to perform the duties of his office, grade, rank or rating. Although Col. Kaster requested a formal PEB be convened to conduct a de novo hearing on his claims, no formal PEB was held.

In its August 13, 2020 Opinion, the Court held that the failure to convene a formal PEB violated Col. Kaster's statutory rights as well as rights granted under applicable Department of

Defense ("DoD") and Department of the Navy ("Navy") instructions. See Op. at 15. It remanded the case to the Secretary of the Navy Council of Review Boards ("CORB") with instructions to hold the formal PEB Col. Kaster was denied in 2013. Id.

On remand, the Navy convened a formal PEB. It rejected Col. Kaster's claims that he should have been placed on the PDRL in 2013, and that his other medical conditions should have also been found unfitting at that time. Admin. R. ("AR") 2029–32. The CORB then denied Col. Kaster's petition for relief from the formal PEB decision. Id. at 2494–95.

The case is now back before the Court. Col. Kaster has filed an amended complaint in which he alleges that the formal PEB and the CORB erred when they found that the informal PEB properly placed him on the TDRL rather than the PDRL in 2013. See First Am. Compl. ("Am. Compl."), ECF No. 34. He also takes issue with their endorsement of the informal PEB's conclusion that his other medical conditions did not render him unfit for service in 2013. See id. ¶¶ 88, 110–121. In addition, he challenges the Navy's failure to provide him with Combat-Related Special Compensation ("CRSC") for which the formal PEB has found him eligible. See id. ¶¶ 93–98. Finally, Col. Kaster contends that the Navy committed procedural errors during the remand proceedings. See id. ¶¶ 105–110. Specifically, he contends that the formal PEB violated applicable rules and regulations when it held a hearing via telephone rather than by video or in person, and when it allegedly did not provide him with access to certain documents. See id.

For the reasons set forth below, the government's motion to dismiss Col. Kaster's CRSC claim is **DENIED** and the claim is **REMANDED** for further consideration by the CORB. The government's motion for judgment on the administrative record as to Col. Kaster's other claims is **GRANTED** and Col. Kaster's cross-motion is **DENIED**.

**BACKGROUND**

**I.   Prior Proceedings**

The Court's initial Opinion contains a detailed discussion of the events that led up to this litigation. See Op. at 2–11. To summarize briefly, Col. Kaster served in the military for some twenty years. Id. at 5 (citing AR 1). His service included several deployments to Iraq where he held the position of Judge Advocate for the Preliminary Investigations Branch. Id. (citing AR 19, 185, 191, 326). In that capacity, Col. Kaster investigated deaths, mass graves, terrorist crimes, suicide bombings, and other disturbing subjects. Id. (citing Compl. ¶ 17, ECF No. 1). When he returned from these deployments in 2008, Col. Kaster, then a Lieutenant Colonel, was assigned to the Office of the Staff Judge Advocate at Marine Forces Central Command at MacDill Air Force Base. Id. (citing AR 24, 255, 287). There, his primary responsibilities included reviewing the investigation of the deaths of Marines assigned to the Central Command in Iraq and Afghanistan. Id. (citing AR 259, 574).

These assignments took a toll on Col. Kaster's health. As a result, on June 29, 2012, Col. Kaster filed a VA/DoD Joint Disability Evaluation Board Claim form (VA Form 21-0819). Id. at 6 (citing AR 542–44). On the form, he alleged that he was suffering from a number conditions

that rendered him unfit for service, including major depression, chronic PTSD, sleep apnea, and chronic pain syndrome. Id.

On September 28, 2012, a Medical Evaluation Board ("MEB") referred Col. Kaster's case to an informal PEB based upon its determination that Col. Kaster had developed these conditions (as well as asthma) during his military service. Id. (citing AR 1828–29).[1] The informal PEB initially found Col. Kaster fit for duty, but reconsidered that conclusion two weeks later, after Col. Kaster submitted additional medical information and requested a formal PEB. Id. (citing AR 1701–05, 1715–16, 1825–26). On reconsideration, the informal PEB determined that Col. Kaster suffered from two unfitting and associated conditions: major depressive disorder and PTSD. Id. (citing AR 1823–25). It concluded, however, that the other conditions the MEB identified (chronic fatigue syndrome, obstructive sleep apnea, and asthma) were "not separately unfitting and d[id] not contribute to the unfitting condition(s)." Id. (quoting AR 1823).

The informal PEB recommended that Col. Kaster be placed on the TDRL based on PTSD and major depressive disorder at a 50% rating. AR 1824. Shortly thereafter, the Department of Veterans Affairs ("VA") proposed a disability rating of 70% for Col. Kaster's PTSD and major depressive disorder. Op. at 6 (citing AR 1806). The informal PEB then updated its findings to reflect this rating. Id. (citing AR 1694–96).[2]

Col. Kaster invoked his right to a formal PEB on May 8, 2013. Id. at 7 (citing AR 1780–87). He argued that his conditions were stable and thus warranted his placement on the PDRL. Id. (citing AR 1784). He submitted additional evidence of his chronic fatigue and chronic pain syndromes as well as sleep apnea, and alleged for the first time that his "Chronic Fatigue Syndrome, aka Fibromyalgia" was an unfitting condition. Id. (citing AR 1784–86).

For reasons described in detail in the Court's initial Opinion, the formal PEB was never convened. See Op. at 7–9. Instead, the CORB accepted the VA's 70% disability rating, and Col. Kaster was officially separated from active duty and placed on the TDRL on September 29, 2013. AR 331. Col. Kaster remained on the TDRL and his condition was periodically evaluated until April 18, 2018. Op. at 9–10. On that date, and consistent with 10 U.S.C. § 1210 (2012), the President of the PEB sent a decision letter to the Commandant of the Marine Corps requesting that Col. Kaster be placed on the PDRL with a disability rating of 70% for major depressive disorder. Id. at 10 (citing AR 340). On May 10, 2018, Col. Kaster was transferred to the PDRL and permanently retired. Id. (citing AR 33, 340).

---

[1] For a detailed discussion of the Navy Disability Evaluation System, see Op. at 2–5.

[2] As the Court explained in its initial Opinion, Col. Kaster was subject to the Integrated Disability Evaluation System ("IDES"), a joint medical evaluation process which combines the disability examinations performed by DoD and the VA and requires the DoD to apply the VA's disability rating determinations for all conditions the Navy determines to be unfitting. Op. at 3 (citing DoD Manual 1332.18 (Vol. 2) (Aug. 2014) encl. 3, ¶ 1); see also id. (citing DoD Manual 1332.18 (Vol. 2) (Aug. 2014) encl. 4, App. 10, ¶ 1) (providing that, while "[t]he [informal] PEB and [formal] PEB determine a Service member's fitness," they "do not assign disability ratings to conditions")).

## II. This Court's Initial Decision Remanding the Case to the Navy

Col. Kaster filed a complaint in this Court on September 27, 2019. See Compl. In it, he alleged, among other things, that the Navy violated governing statutes and regulations as well as the due process clause by failing to afford him a full and fair hearing before a formal PEB. See id. ¶¶ 81–101. In its initial Opinion the Court agreed, granting in part Col. Kaster's motion for judgment on the administrative record, dismissing the balance of his claims as moot, and remanding the case to the Secretary of the CORB with instructions to convene the formal PEB Col. Kaster was wrongly denied in 2013. See Op. at 15. The Court instructed the formal PEB to address on remand Col. Kaster's claims: (1) that he should have been placed on the PDRL in 2013 based on his PTSD and major depressive disorder; and (2) that the other conditions about which he complained at the time were also unfitting or contributed to his unfitness. Id.

## III. The Navy's Decision on Remand

The formal PEB held a telephonic hearing on Col. Kaster's claims on January 27, 2021. AR 2028. At the hearing, Col. Kaster requested that the formal PEB find him unfit for service due to PTSD/major depressive disorder, rated at 70%; fibromyalgia, rated at 40%; and chronic fatigue syndrome, rated at 40%. Id. He alleged that all of these conditions were combat related and stable at the time he was discharged from active service on September 29, 2013. Id. He also requested that the formal PEB find him unfit based on central sleep apnea, rated at 40%, which he characterized as stable but not combat related. Id. Col. Kaster further alleged that because all his conditions were stable at the time that he was placed on the TDRL in 2013, he should have instead then been transferred to the PDRL. Id. at 2029.

The formal PEB rejected Col. Kaster's arguments. Id. at 2029–32. It concluded that he could not have been placed on the PDRL in 2013 based on the two unfitting and associated conditions of major depressive disorder and PTSD because 38 C.F.R. § 4.129 (a VA regulation made applicable to DoD by the National Defense Authorization Act ("NDAA") of 2008) required that those conditions be re-evaluated within six months after his release from active duty. Id. at 2029. Further, based on the record before it, the formal PEB concluded that chronic fatigue syndrome, fibromyalgia, and/or sleep apnea did not, either separately or collectively, render Col. Kaster unfit for service in 2013. Id. at 2029–32.

On February 11, 2021, Col. Kaster filed a petition for relief from the formal PEB decision with the Director of CORB, which was denied on March 8, 2021. Id. at 2464–95. The Director determined that the formal PEB had correctly found that there was insufficient evidence that Col. Kaster suffered from chronic fatigue syndrome or fibromyalgia that were separately or collectively unfitting in 2013. Id. at 2494–95. He likewise determined that there was insufficient evidence that central sleep apnea affected Col. Kaster's performance prior to his separation in 2013. Id.

## IV. The Present Challenge to the Navy's Decision on Remand

Col. Kaster filed an amended complaint in this Court on May 21, 2021. In it, he asserts that he was denied CRSC payments to which he is allegedly entitled pursuant to Secretary of the

4

Navy Instruction ("SECNAVINST") 1850.4E in light of the formal PEB's finding that his PTSD/major depressive disorder was combat related. Am. Compl. ¶¶ 93–98; see also Pl.'s Consol. Opp. to Def.'s Mot. to Dismiss or in the Alternative Mot. for J. on the Admin. R. and Cross-Mot. for J. on the Admin. R. ("Pl.'s Cross-MJAR") at 12–13, ECF No. 39. In his second cause of action, he argues that the formal PEB improperly failed to transfer him to the PDRL retroactive to September 30, 2013. Am. Compl. ¶¶ 99–103. And in his third and final cause of action, Col. Kaster claims that the formal PEB's actions were arbitrary and capricious, unsupported by substantial evidence, and in violation of law and regulation in that it: (1) did not grant his written request to see his Total Records and Information Management ("TRIM") file, in violation of SECNAVINST 1850.4E encl. 4, ¶ 4316, id. ¶¶ 105–06; (2) improperly refused to convene his hearing in person or via videoconference (as opposed to via teleconference), in violation of SECNAVINST 1850.4E encl. 4, ¶¶ 4330 & 4313, id. ¶¶ 107–10; and (3) improperly denied his requests that he be found unfit to perform the duties of his grade, rank, or rating based on fibromyalgia, chronic fatigue syndrome, and central sleep apnea, id. ¶¶ 111–21.

The government filed the record of the remand proceedings on June 11, 2021. ECF No. 35. The same day, it filed its second combined motions to dismiss for failure to state a claim and for judgment on the administrative record. Def.'s Combined Mot. to Dismiss & Mot. for J. on the Admin. R. ("Def.'s MJAR"), ECF No. 36. Col. Kaster filed a cross-motion for judgment on the administrative record on August 2, 2021. See generally Pl.'s Cross-MJAR.

The matter is now fully briefed. The Court has determined that oral argument on the pending motions is unnecessary.

## DISCUSSION

### I.   Motion to Dismiss Claim for Combat-Related Special Compensation

As noted, Col. Kaster's first claim is that he was wrongfully denied CRSC payments despite the fact that both the formal PEB and the CORB acknowledged that his PTSD and major depressive disorder were combat-related and were incurred in a combat zone. See Am. Compl. ¶¶ 93–98.[3] The government has moved to dismiss this claim on the grounds that Col. Kaster has not alleged in his amended complaint that he formally elected to receive combat-related compensation. See Def.'s MJAR at 18–20.

The Court agrees with Col. Kaster that the decisions of the formal PEB and the CORB confirmed his eligibility for CRSC payments based on his PTSD and major depressive disorder.

---

[3] CRSC payments are made to "provide[] special compensation to members of the Uniformed Services who have retired pay reduced because of receiving [VA] disability compensation where a portion of such VA disability compensation is the result of disabilities that are combat-related." Department of Defense Financial Management Regulation 7000.14R, vol. 7B, chap. 63 § 630101 (November 2019), App. to Def.'s MJAR at 4, ECF No. 36-1. CRSC payments consist of "the amount of compensation to which the retiree is entitled under title 38 for that month, determined without regard to any disability of the retiree that is not a combat-related disability." 10 U.S.C. § 1413a(b)(1).

5

It agrees with the government, however, that a formal election was a pre-requisite to his receipt of such payments.

Section 1413a of Title 10 of the United States Code provides, with exceptions not relevant here, that "the Secretary concerned shall pay [CRSC] to each eligible combat-related disabled uniformed services retiree who elects benefits under this section." 10 U.S.C. § 1413a(a) (emphasis supplied). Further, DoD regulations enacted pursuant to 10 U.S.C. § 1413a(d) specify that to receive CRSC, an eligible service member must first submit DoD DD Form 2860 to the appropriate branch of the military. See Department of Defense Financial Management Regulation 7000.14R, vol. 7B, chap. 63 § 630301 (November 2019), App. to Def.'s MJAR at 6 ("A member may not be paid CRSC unless he or she has applied for and elected to receive compensation under the CRSC program by filing an application on DoD (DD) Form 2860 . . . with the Military Department from which he or she retired.").

The election required to receive CRSC payments is more than a mere formality. As the government points out, an "[e]lection is required, in part, because an election to receive CRSC may have other impacts on the compensation of a service member." Def.'s MJAR at 19 (observing that, "for example, a service member may receive CRSC or Concurrent Retirement and Disability Payments pursuant to 10 U.S.C. § 1414, but not both" (citing Department of Defense Financial Management Regulation 7000.14R, vol. 7B, chap. 63, § 630302 (November 2019), App. to Def.'s MJAR at 6)).

In this case, Col. Kaster did not file DoD DD Form 2860 until August 2, 2021, the date he responded to the government's motion for judgment on the administrative record. See Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for J. on the Admin. R. ("Pl.'s Reply") at 1, ECF No. 45. The government is therefore correct that—at the time he filed his amended complaint—Col. Kaster had not elected to receive CRSC payments. See Def.'s MJAR at 18. Nonetheless, the Navy acted on the August 2, 2021 application on September 3, 2021. See generally Pl.'s Reply Exs. 1–2. But that unfortunately has not resolved the matter because, when it did so, it identified Col. Kaster's combat-related condition as fibromyalgia and stated that his "application [did] not establish that specific combat-related events caused [his PTSD] diagnosis." Id. Ex. 2, at 1.

The rationale for the Navy's disposition of Col. Kaster's application is not apparent to the Court. The formal PEB and CORB determined that Col. Kaster's PTSD was combat related. See AR 2028–29, 2494. Col. Kaster supplied a copy of the PEB's decision with his application, and referenced it in the section of the application that instructs the service member to, "in [their] own words, describe the events surrounding the disability and how it meets the guidelines of combat-related." See Pl.'s Reply Ex. 1, at 2.

Because Col. Kaster has now filed his application and formally elected to receive CRSC payments, the Court denies the government's motion to dismiss. The Court remands the case back to the CORB, however, for reconsideration of the Navy's determination that Col. Kaster is not entitled to receive CRSC payments based on his PTSD.

6

**II.     Col. Kaster's Argument that the PEB Should Have Transferred Him to the PDRL Retroactive to 2013**

Col. Kaster next challenges the PEB's refusal on remand to make his transfer to the PDRL in 2018 retroactive to September 29, 2013 (the date he was transferred to the TDRL). Am. Compl. ¶¶ 99–103. The government has moved for judgment on the administrative record as to this claim. It contends that governing regulations required that Col. Kaster be placed on the TDRL because he was found unfit for duty on the basis of his major depressive disorder and PTSD, and not the other conditions about which he complains. Def.'s MJAR at 21–22. The Court agrees.

As explained in greater detail in the Court's initial Opinion, the statute governing the retirement of members of the military due to medical unfitness states that, "[u]pon a determination by the Secretary concerned that a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," a service member with at least twenty years of active service may be either permanently retired pursuant to 10 U.S.C. § 1201 or placed on the TDRL pursuant to 10 U.S.C. § 1202. See 10 U.S.C. § 1201(a); see also Op. at 2. The Secretary of the Navy, through the PEB, makes the fitness determination as well as the decision whether it is appropriate to place the service member on the PDRL or the TDRL. SECNAVINST 1850.4E encl. 1, ¶ 1004(a). The Department of the Navy Disability Evaluation Manual (hereinafter "the Manual") further explains that if the PEB determines that an eligible service member is unfit to continue naval service, it must also decide whether the member should be placed on the PDRL or on the TDRL. See id. encl. 2, ¶ 2023 (defining "disposition" as a fitness determination, and providing that the "PEB directs service headquarters to effect a member's status within the naval service" and placement on the appropriate disability retirement list).

Placement on the TDRL is appropriate if the unfitting condition "is not determined to be of a permanent nature and stable." 10 U.S.C. § 1202. DoD guidance further provides that "[a] disability shall be considered unstable when the preponderance of medical evidence establishes that accepted medical principles indicate[] the severity of the condition will change within the next 5 years so as to result in an increase or decrease of the disability rating percentage or a finding of Fit." SECNAVINST 1850.4E encl. 3, ¶ 3601(a).

Significant for purposes of this case, placement on the TDRL (as opposed to the PDRL) is required where the newly identified unfitting condition involves "a mental disorder that develops in service as a result of a highly stressful event [that] is severe enough to bring about the veteran's release from active military service." 38 C.F.R. § 4.129. The VA regulation provides that, in those circumstances, "the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six[-]month period following the veteran's discharge to determine whether a change in evaluation is warranted." Id.

In accordance with the National Defense Authorization Act of 2008, Pub. L. No. 110-181, 122 Stat. 3, the military departments are required to comply with 38 C.F.R. § 4.129. See Under Secretary of Defense for Personnel and Readiness, Memorandum for Secretaries of the Military Departments et al., Policy Memorandum on Implementing Disability-Related

Provisions of the National Defense Authorization Act of 2008 (Pub. L. 110–181) (Oct. 14, 2008) ("NDAA Memo") encl. 7, ¶ 7.2 (instructing the "Secretary concerned [to] abide by [10 U.S.C. § 1216(a)] and [38 C.F.R. § 4.129] for disposition of Service members found unfit because of a mental disorder due to traumatic stress"). The NDAA Memo specifically states that service members like Col. Kaster, whose unfitting condition is PTSD, must be assigned a disability rating of "not less than 50[%]," "placed on the [TDRL,] and re-evaluated within . . . 6 months, from the date of placement on the TDRL." Id. encl. 7, ¶¶ 7.2, 7.2.2.[4]

Col. Kaster contends that the PEB's determination that it lacked the authority to place him on the PDRL in September of 2013 is inconsistent with canons of construction that favor liberal interpretation of statutes intended to benefit veterans. Pl.'s Cross-MJAR at 13–14 (citing Boone v. Lightner, 319 U.S. 561 (1943) & Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 441 (2011)). But this principle applies where a statute or regulation is ambiguous. See Henderson ex rel. Henderson, 562 U.S. at 439. There is no ambiguity here and therefore no occasion to apply the canon of construction upon which Col. Kaster relies.

In short, the PEB's determination that Col. Kaster could not have been placed on the PDRL in 2013 is consistent with the plain language of the VA regulation and the DoD directives interpreting that regulation. Therefore, the government is entitled to judgment on the administrative record as to this claim.

### III.   Col. Kaster's Allegations that He Suffered from Other Unfitting Conditions

In his amended complaint, Col. Kaster alleges that the formal PEB's determination that his fibromyalgia, chronic fatigue syndrome, and sleep apnea were not individually or collectively unfitting and did not contribute to his unfitness in 2013 is not supported by substantial evidence. Am. Compl. ¶¶ 111–21. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Further, when reviewing the Navy's decision, the Court must also keep in mind the well-established principles that "determining who is fit or unfit to serve in the armed services is not [within the] judicial province," and that it may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). These principles require the rejection of Col. Kaster's claims.

#### A.   Fibromyalgia/Chronic Fatigue Syndrome

As described above, Col. Kaster seeks reversal in this Court of the PEB's determination that chronic fatigue syndrome and fibromyalgia were not individually or collectively unfitting as

---

[4] Service members suffering from PTSD can nonetheless be permanently retired if they are also "found unfit with a rating of 80% or greater for a permanent and stable condition (or conditions) not related to diagnosis of the mental disorder due to traumatic stress." NDAA Memo encl. 7, ¶ 7.2.1.

of September 29, 2013. See Am. Compl. ¶¶ 111–18. Contrary to Col. Kaster's arguments, however, that determination is supported by substantial evidence.

Thus, as the formal PEB concluded, the "bulk" of the "medical evidence [before it] in regards to chronic fatigue syndrome and fibromyalgia . . . related to [Col. Kaster's] functioning after his 2013 discharge and was predominantly from 2015 to 2020." AR 2030. Similarly, the majority of Col. Kaster's testimony before the board concerned the impact of fatigue and pain on his current functioning. Id. at 2030; see id. at 2294–97 (formal PEB hearing transcript). The board considered the evidence and "recognize[d] the current debilitating effects of [Col. Kaster's] chronic fatigue syndrome and fibromyalgia." Id. at 2030. It concluded, however, that the "paucity of objective evidence prior to his separation on [September 29, 2013,] outweighs the testimony that these conditions were unfitting at the time of his release from active service." Id.

These conclusions are supported by the record. Col. Kaster testified that his chronic pain symptoms began "in Iraq in 2004 and 2005" and "got really bad after [his] deployment to Bahrain in 2010." Id. at 2306. But he also testified that after 2010 he had been "to doctor after doctor after doctor for fibromyalgia usually with no results or negative results." Id. at 2323; see also id. at 2327 (testifying that "everybody kept saying [he] didn't have fibromyalgia"); id. at 2324–25 (stating that "most of the doctors always said that fibromyalgia was kind of a throwaway diagnosis when they couldn't find anything else"). In fact, when he filed his disability claim in mid-2012, he "claimed chronic pain instead of fibromyalgia." Id. at 2328–29.

The formal PEB acknowledged that when Col. Kaster listed "chronic pain syndrome" on his 2012 VA disability questionnaire, he might have been referring to the same symptoms that he had also characterized as "fibromyalgia" and for which he sought treatment after his 2010 deployment. Id. at 2030. It further observed that chronic fatigue syndrome and fibromyalgia can have "clinical overlap." Id. at 2029–30. The board stated that "[t]he medical record contains a single medical note/visit with a rheumatologist dated 11 February 2013 providing the diagnosis of fibromyalgia." Id. at 2029 (referencing AR 764–65) (rheumatology report dated February 11, 2013). However, the board noted, a review of the record showed that when Col. Kaster sought care for both fibromyalgia and chronic fatigue in 2008 and 2009, "he was treated with Wellbutrin and described as 'doing well' with such treatment." Id. Medical reports documenting his condition in 2013 similarly show that his symptoms of fibromyalgia or chronic fatigue were then being controlled to at least some extent with medication. See id. at 497 (February 20, 2013 report of rheumatology visit stating that Col. Kaster "is doing fairly well with the Cymbalta," despite "chronic fatigue" and "marked pain"); id. at 493 (May 28, 2013 rheumatology visit documenting that "patient states that his energy is improved" and that he "finds [Nuvigil] useful for fatigue"); id. at 532 (listing chronic pain and fatigue under "Potentially Unfitting Diagnos(es)" but noting "[s]ymptomatic control with Cymbalta"); id. at 792–94 (September 20, 2013, VA Chronic Fatigue Syndrome Disability Benefits Questionnaire noting that Col. Kaster's symptoms return only "sporadically").

Col. Kaster contends that in finding that he was not unfit as a result of fibromyalgia and chronic fatigue syndrome the board ignored his Commander's Non-Medical Assessment, which described Col. Kaster's lack of physical energy, fatigue, and inability to perform his legal work. Pl.'s Cross-MJAR at 17–18 (citing AR 1728–33). His Commander's assessment of his fitness

was certainly relevant. But because his Commander is not a physician, he lacks the qualifications to decide which of Col. Kaster's several medical conditions caused him to be unable to perform his duties. That determination is the responsibility of the PEB, which reasonably found that the cause was PTSD and major depressive disorder, not fibromyalgia or chronic fatigue syndrome.

In short, the formal PEB's decision that, as of September 2013, Col. Kaster was not unfit by reason of fibromyalgia, chronic pain syndrome, or chronic fatigue is supported by substantial evidence. The government is therefore entitled to judgment on the administrative record as to Col. Kaster's claims that he should have been found unfit for duty as a result of those conditions as of September 29, 2013.

### B. Sleep Apnea

Col. Kaster alleges that the formal PEB should have found him unfit for duty as of September 29, 2013, based on sleep apnea, for which he began treatment in 2009. See Am. Compl. ¶¶ 119–21. The board's determination to the contrary, however, was supported by substantial evidence. As the board observed, "[s]leep apnea is a treatable condition." AR 2032. Further, it reasonably found that Col. Kaster's sleep apnea was under "adequate control" in 2013 as evidenced by multiple sleep studies, which "demonstrat[ed] marked reduction of apnea/hypopnea episodes and restoration of sleep efficiency with the use of a CPAP device." Id.

The formal PEB based its conclusions on a review of the record as well as the testimony of Dr. William Highlander, a neurologist and sleep specialist. See id. at 2028. Dr. Highlander has been treating Col. Kaster's sleep apnea since 2015. Id. at 2031. Dr. Highlander testified that Col. Kaster presently has both obstructive and central sleep apnea and that the latter is of greater concern because of the difficulty treating it and the risk of further complications. Id.

Dr. Highlander noted that, when he examined Col. Kaster in 2015, Col. Kaster was being treated for obstructive sleep apnea only. Id. at 2371–72. He acknowledged that he could not state that Col. Kaster had central sleep apnea in 2013; in fact, he opined that a January 2012 sleep study did not appear consistent with a diagnosis of central sleep apnea. Id. at 2031. And in any event, he testified, he could not confirm that Col. Kaster was unfit for duty as a result of sleep apnea in 2013 (whether the sleep apnea was obstructive or central). Id. at 2377. [5]

---

[5] The Court notes that the board was of the view that Col. Kaster was not diagnosed with central sleep apnea until 2015 when he began seeing Dr. Highlander. AR 2031. It downplayed the fact that central sleep apnea is listed among "previous diagnoses" in the February 11, 2013 rheumatology report, reasoning that the notation probably reflected a coding error because the report did not mention Col. Kaster's longstanding obstructive sleep apnea diagnosis or treatment. Id. The Court notes, however, that contrary to the board's understanding, central sleep apnea diagnoses are also mentioned briefly in other records prepared before the rheumatology report. See id. at 1828; id. at 1832–33. The Court is of the view that, despite this oversight, there is substantial evidence to support the board's conclusion that Col. Kaster had obstructive but not central sleep apnea as of September 29, 2013. But either way, the question of the type of sleep apnea Col. Kaster suffered from in September of 2013 is immaterial, because substantial

Col. Kaster argues that the board failed to appreciate that he could not have been deployed to work in the field with his CPAP machine. See Am. Compl. ¶ 120; see also AR 2311–14 (Col. Kaster's testimony regarding the difficulty and impracticability of deploying while using a CPAP machine). But the Manual instructs that a service member's "[i]nability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of Unfit." SECNAVINST 1850.4E encl. 3, ¶ 3304(a)(3). The Manual further explains that "[n]on-deployability does not necessarily equate to Unfitness." Id. encl. 2, ¶ 2019. Rather, it is only one factor in the fitness determination, and alone "will not normally constitute a basis for a finding of Unfit." Id. ¶ 2051. The board therefore reasonably rejected Col. Kaster's arguments based on the impracticality of "go[ing] to war" with a CPAP machine. See Pl.'s Cross-MJAR at 23–24.

For these reasons, the Court finds that the board's decision that Col. Kaster was not rendered unfit for duty as a result of sleep apnea as of September 29, 2013, was supported by substantial evidence. The government's motion for judgment on the administrative record as to this claim is therefore granted.

## IV.   Procedural Errors

### A.   Total Records and Information Management File

The Manual provides that service members "shall have the right of access to all records and information received by the PEB before, during, and after the formal hearing that may affect the findings of the PEB or appellate review authority." SECNAVINST 1850.4E encl. 4, ¶ 4316. Col. Kaster alleges that the formal PEB violated this directive because it allegedly did not comply with his written request to see his Total Records and Information Management ("TRIM") file. Am. Compl. ¶¶ 105–06.

This contention lacks merit. As the government points out, Col. Kaster submitted documents to the formal PEB, AR 2028, 2030–31, and was represented at the hearing by both private counsel and Navy Disability Evaluation System attorney Major Michael Collins, who was designated as co-counsel, id. at 2257, 2272–73. Col. Kaster does not deny that Major Collins had access to his TRIM file. See Def.'s MJAR at 23; Def.'s Resp. to Pl.'s Cross-Mot. for J. on the Admin. R. and Reply in Support of Def.'s Combined Mot. to Dismiss and Mot. for J. on the Admin. R. at 8–9, ECF No. 40; Pl.'s Cross-MJAR at 15–16. Col. Kaster complains, however, that his counsel had difficulty sharing the TRIM file amongst themselves or with him. See Pl.'s Cross-MJAR Exs. 1–2, ECF Nos. 39-1 & 39-2 (two emails from Col. Kaster to Major Collins, dated October 28, 2020, and November 6, 2020, respectively, which ask Major Collins to send or make the TRIM file available to Col. Kaster and his private counsel). Col. Kaster explains that Major Collins was not "co-located" with him or his private counsel and that, "[d]ue to Covid restraints," neither he nor private counsel could travel to Washington, DC. Pl.'s Cross-MJAR at 15–16. He further observes that, "[w]hile there seems to be some effort to provide access via

---

evidence supports the board's conclusion that at that time the condition was under control and not unfitting.

email" or through the DoD's Secure Access File Exchange, "the effort was not fruitful." Id. at 16.

The Court notes that Col. Kaster failed to bring this problem to the attention of the formal PEB. See AR 2255–2430 (January 27, 2021 formal PEB hearing transcript). Nor has he explained how he was prejudiced by it. But in any event, the Navy did not violate its regulations because Col. Kaster had access to the documents in question through co-counsel, Major Collins. The communications difficulties among and between Col. Kaster and his counsel are not attributable to any action taken by the Navy. Therefore, the government's motion for judgment on the administrative record as to this claim is granted.

### B.  Request for an In-Person or Videoconference Hearing

Finally, Col. Kaster challenges the formal PEB's decision to hold the hearing via telephone rather than in person or by video conference as he had requested. See Am. Compl. ¶¶ 107–10. He claims that doing so violated the requirement in the Manual that the formal PEB "shall make findings with regard to the physical fitness for active duty . . . on the basis of a formal personal hearing conducted in the presence of the member being evaluated, unless such appearance is waived or would be injurious to health, and/or his or her counsel." SECNAVINST 1850.4E encl. 4, ¶ 4330(a); see also id. ¶ 4313 ("A member shall have the right to appear personally at the Formal PEB, which may include video teleconferencing, unless such appearance proves impracticable because the member cannot travel (e.g., the member is incarcerated or incapacitated).").

The Manual's requirement on which Col. Kaster relies, however, has been modified in response to the COVID-19 pandemic. On July 16, 2020, the Principal Deputy Assistant Secretary of the Navy (Manpower and Reserve Affairs), issued a memorandum to the President of the PEB, through the Director, Secretary of the Navy Council of Review Boards. See AR 2439 (Assistant Undersecretary of the Navy, Manpower and Reserve Affairs, Memorandum for President, Physical Evaluation Board, Formal Physical Evaluation Board Personal Appearance Hearings (July 16, 2020)). This memorandum created a temporary exception to the personal appearance policy contained in the Manual in light of the COVID-19 pandemic, authorizing boards to require service members to appear telephonically at formal PEB hearings. See id.

Col. Kaster now argues that it was "critical for the board to observe his condition rather than merely hear[] his voice," alleging that the Navy's refusal to afford him an in-person or videoconference hearing constituted a denial of his procedural rights "by not allowing the members [of the formal PEB] to observe his condition and demeanor." Pl.'s Cross-MJAR at 16; see also Am. Compl. ¶ 110 (pointing to the "inability [of the formal PEB] to visualize the impact of medical conditions on Colonel Kaster's functional ability").

As modified by the July 16, 2020 memorandum, the Navy regulations authorized the PEB to hold the hearing by telephone. Further, Col. Kaster has not explained how he was prejudiced by not having the hearing held instead via videoconference. Instead, he states that he "is not required to show harm" because "[t]he violation itself is harm enough to justify sanction." Pl.'s Reply at 9. That is not, however, the law. Rather, the rule in military pay cases is that no

12

relief is available for a procedural error that is "harmless"—i.e., one that does not substantially affect the outcome of the matter. Wagner v. United States, 365 F.3d 1358, 1361 (Fed. Cir. 2004); see also Christian v. United States, 337 F.3d 1338 (Fed. Cir. 2003).

Col. Kaster, his wife, and his expert, Dr. Highlander, were all able to testify and respond to the board's questions during the telephonic hearing. See AR 2028–30. Further, the board's decision did not turn on Col. Kaster's demeanor or credibility; nor did it turn on his current physical condition. The board's decision was based on what it considered was insufficient medical documentation to show unfitness as of 2013, except as to that resulting from his PTSD and major depressive disorder. Col. Kaster has failed to show harmful error. The government's motion for judgment on the administrative record is therefore granted as to his claim that the PEB hearing should have been held via videoconference.[6]

## CONCLUSION

On the basis of the foregoing, the government's motion to dismiss Col. Kaster's claim for Combat-Related Special Compensation, ECF No. 36, is **DENIED**, and that claim is **REMANDED** to the CORB for reconsideration. The remand proceedings must be completed within sixty days. Pursuant to Rule 52.2(e) of the Rules of the Court of Federal Claims, the parties shall file notice with the Court within thirty days of the CORB's decision on remand stating whether that decision affords a satisfactory basis for the disposition of that claim and whether the parties require further proceedings before the Court.

The government's motion for judgment on the administrative record as to the balance of Col. Kaster's claims, ECF No. 36, is **GRANTED** and Col. Kaster's cross-motion for judgment on the administrative record, ECF No. 39, is **DENIED**.

The Clerk is directed to serve this Opinion and Order on the Director, Secretary of the Navy Council of Review Boards at the following address:

Jeffrey Riehl, Director
Department of the Navy
Secretary of the Navy Council of Review Boards
720 Kennon Street SE, Suite 309
Washington Navy Yard, DC 20374-5023

**IT IS SO ORDERED.**

---

[6] The Court notes that Col. Kaster asserts two claims in his Reply that did not appear in either his amended complaint or opening brief. These are: (1) that the Navy "still has not corrected [his] disability rating from 50% to 70% from June 2017 to May 2018," Pl.'s Reply at 8; and (2) that "[a]ll three of [his informal PEBs] were improperly constituted," id. at 7. Because they were not timely raised, the Court declines to consider these issues.

s/ Elaine D. Kaplan  
ELAINE D. KAPLAN  
Chief Judge
